JAMES E. PLATTER, *et al.*, v. M. T. GREEN, *et al.*

1. GUARANTY, *When Complete; Continuing Guaranty.* T. A. Wilkinson was a retail dealer in building materials at Winfield, and the Chicago Lumber Company was a wholesale dealer in building materials at Wichita, and Wilkinson, desiring to purchase building materials from the Chicago Lumber Company on credit, to enable him to carry on his business at Winfield, procured the following guaranty from the defendants, James E. Platter, M. G. Troup and J. W. Curns, in order to obtain such building materials as he might want for his business. The contract signed by the guarantors is as follows:

"WINFIELD, KANSAS, March 11, 1878.—We hereby authorize the Chicago Lumber Company, of Wichita, Kansas, to furnish to T. A. Wilkinson such building materials as he may wish, not exceeding the value of two thousand dollars at once; and if the said T. A. Wilkinson shall fail to pay for the same either in money or material received from the Chicago Lumber Company, then upon ninety days' notice we agree to pay to the Chicago Lumber Company the amount remaining due from T. A. Wilkinson to the Chicago Lumber Company."

On the same day that this guaranty was procured, and on several subsequent days, and in pursuance of such guaranty, the Chicago Lumber Company furnished to T. A. Wilkinson all the building materials he desired, but did not at any one time furnish to him an amount exceeding in value the sum of two thousand dollars, but did furnish in the aggregate an amount exceeding in value that sum; and also, at several times created an indebtedness in the aggregate in favor of the Chicago Lumber Company and against T. A. Wilkinson for a sum greater than $2,000. No notice was ever given by the Chicago Lumber Company to the defendants, Platter, Troup and Curns, except the notice provided for in the latter portion of said guaranty. Wilkinson paid the Chicago Lumber Company for all the building materials furnished by it to him, except the amount of $1,999.41, for which amount the Chicago Lumber Company, after giving the notice provided for in the latter part of said guaranty, sued Wilkinson and the guarantors, Platter, Troup and Curns. The court below rendered judgment in favor of the plaintiffs and against all the defendants. *Held*—

1st, That the written guaranty became a completed and binding contract as soon as the Chicago Lumber Company accepted it and furnished building materials thereunder, without notice having been previously given to the guarantors that the Chicago Lumber Company would accept the guaranty.

2d, The guaranty was a continuing one, and was not so exhausted at the first time building materials were furnished under it that no further building materials could at any time afterward be furnished thereunder.

3d, As no loss is shown to have occurred on account of the failure of the Chicago Lumber Company to give notice to the guarantors of the

advances made by them to Wilkinson, the principal, of building materials, the guarantors are not released from their obligation on their written guaranty.

2. GUARANTY, *Limit of.* The written guaranty did not prevent Wilkinson from purchasing more than $2,000 worth of building materials from the Chicago Lumber Company, nor did it prevent him from becoming indebted to said company in a sum greater than that amount; but it simply prevented Wilkinson from purchasing at any one time of the Chicago Lumber Company, on the credit of the defendants, Platter, Troup and Curns, more than $2,000 worth of building materials, and from creating a liability against such defendants at any one time for more than that amount.

3. ———— *Sufficient Notice.* The notice given by the Chicago Lumber' Company to the defendants, Platter, Troup and Curns, was sufficient.

### *Error from Cowley District Court.*

AT the December Term, 1880, of the district court, *M. T. Green, E. T. Williamson* and *Geo. L. Pratt,* partners as the Chicago Lumber Company, recovered a judgment against *Jas. E. Platter* and two others, who bring the case here. The opinion contains a statement of the facts.

*A. J. Pyburn,* and *M. G. Troup,* for plaintiffs in error:

1. If the instrument sued upon be read without the words "at once," it can, by no reasonable construction, be tortured into meaning more than a single transaction. We therefore conclude that the extent of the liability imposed on these plaintiffs by said instrument depends largely, nay, perhaps wholly, upon the meaning that attaches to the words "at once," as they are used therein. In Webster's Unabridged Dictionary we find the phrase "at once" to mean, "at the same point of time; immediately; without delay," and we do not find that this phrase ever has any other meaning attached to it. Now, interpreting this instrument in the light of the circumstances surrounding all the parties affected thereby, what meaning can reasonably be given to said phrase other than the one which Webster gives it? Certainly it was intended to mean something, and if it was not intended to refer to and limit the *time* at which said sale of materials was to be made,

and credit therefor extended, then these plaintiffs made no stipulation as to the *time* when said credit was to be given to their principal by the defendants, which we think would be an unreasonable and improbable construction to place upon said instrument. "What is the most reasonable interpretation of a guaranty, is to be deduced, considering the subject, the relative condition of the parties, and their probable intent, from the language employed in it." (*Baily v. Larchar*, 5 R. I. 530.) A guaranty of bills *not to exceed* a certain amount, is not a continuing guaranty. (16 Serg. & R. 212; see also 1 E. D. Smith, 32; 2 Am. Leading Cases, p. 101, and cases there cited.) It seems that there are no definite rules for determining whether a guaranty shall be a continuing one or not, as the terms of the guarantors, and the circumstances under which they are given, differ in almost every case. (Brandt on Suretyship, § 130.) For adjudicated cases, and instances of guaranties held not to be continuing, see *Birdsall v. Heacock*, 32 Ohio St. 177; *White v. Reed*, 15 Conn. 457; *Gard v. Stevens*, 12 Mich. 292; *Whitney v. Groot*, 24 Wend. 82; *Anderson v. Blakely*, 2 Watts & S. 237; *Congdon v. Reed*, 7 R. I. 570; *Rogers v. Ewart*, 1 Rice, 126; Brandt on Suretyship, §§ 135, 136, 137, and cases cited.

2. But if this guaranty should be held to be a continuing one, still the defendants in error ought not to recover any judgment against the plaintiffs in error, because —

"Where the guaranty is a letter of credit, or is an offer to become responsible for a credit which may, or may not, be given to another, at the option of the party to whom the application for credit is made, the great weight of authority is, that the guarantor must, within a reasonable time, be notified of the acceptance of the guaranty." (Brandt on Suretyship, § 157.)

This is the firmly-settled doctrine of the supreme court of the United States. (*Edmonston v. Drake*, 5 Pet. 624; *Douglass v. Reynolds*, 7 id. 113; *Lee v. Dick*, 10 id. 482; *Adams v. Jones*, 12 id. 207.) These decisions have been, with few exceptions, followed and approved in the United States. (Brandt on Suretyship, § 157, and cases cited.)

Where the guaranty is a continuing one, the same reasons which require notice of the acceptance of the guaranty, also require notice of the advances made under it. "It has accordingly been held, and is well established, that in the case of a continuing guaranty, not only must notice of acceptance be given, but also within a reasonable time after all the transactions are closed, the guarantor must be notified of the amount due under the guaranty." (Brandt on Suretyship, § 163, and cases cited.)

3. As to the necessity for notice of demand and default by the principal, it has been held that, "Where the liability of the guarantor is not direct, but is collateral and dependent upon the default of another, notice of such default to such guarantor, within a reasonable time, is necessary." (Brandt on Suretyship, §§ 168, 169.)

4. Will the fact that the defendants in error permitted Wilkinson's credit at sundry times during their transactions with him to exceed the sum of $2,000, operate as a discharge of the liability of these plaintiffs in the premises? We think it will. These plaintiffs certainly expressly stipulated in their offer of guaranty in this case, that Wilkinson's credit with defendants should never exceed the above sum. They so understood the contract to be when they signed it. Certainly the limitation, as expressed in the guaranty, cannot be deemed to mean only a limitation on the *ultimate* liability of these plaintiffs. There is no similarity between the guaranty here and that in *Curtis v. Hubbard,* 6 Metc. (Mass.) 186.

"A guarantor is . . . liable only to the extent of his engagement, and this upon the universal principle that a man's liability on his contract is to be determined only by his contract. Nothing, indeed, can be clearer, either upon principle or authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation or undertaking, he is bound, and no further. . . . It is not sufficient that he may sustain no injury by the change in the contract, or that it may even be for his benefit: he has a right to stand upon the very terms of his contract; and if he does not assent

to any variation of it, and a variation is made, it is fatal."
(Bateman on Commercial Law, § 402; 9 Wheat. 680, 720;
2 Pick. 255, 236; 8 Wend. 512; 17 id. 422; 3 Wash. C. C.
70; 4 id. 678; 15 N. H. 119; 2 Pa. 27; 10 Johns. 587; 3
Stewart, 14; 6 Hill, 740; 2 Denio, 375; Brandt on Surety-
ship, §§ 338, 345.)

*Leland J. Webb,* for plaintiff in error Jas. E. Platter:

1. In the contract under consideration, I think that the
intention of the guarantors was, first, to limit the amount of
lumber and materials furnished Wilkinson, to two thousand
dollars; second, that whatever amount he might wish, not
exceeding said sum, was to be furnished at once; that is, as
Webster defines the words "at once," "at one time, or one
occasion, and one only."

If it be true that the guaranty is a *continuing* one, the
Chicago Lumber Company could have furnished Wilkinson
not exceeding two thousand dollars' worth of lumber and ma-
terials each and every day during the time it is claimed he
was furnished lumber and material upon the guaranty, and the
guarantors would have been liable therefor. We must read
this guaranty in the light of the circumstances under which
it was entered into. Wilkinson and his guarantors were at
Winfield. The Chicago Lumber Company was at Wichita.
The company knew the extent of Wilkinson's transactions
with it. The guarantors could not and did not know that
he had any transactions with the company upon the strength
of the guaranty. It is not only unreasonable but it is pre-
posterous to say that the defendants intended to give the
plaintiffs authority to furnish Wilkinson $2,000 worth of lum-
ber *every* time he wished that amount. Their obvious intent
was to limit him to one purchase and to limit that purchase
to $2,000. In support of my construction of this guaranty
I refer to the case of *Birdsall v. Heacock,* 32 Ohio St. 177,
which in all respects is like this case, except that in that
there was no limit to the amount to be furnished. When the
defendants in error received the guaranty and furnished Wil-
kinson $1,524.26 worth of lumber on the 11th of March,

1878, (that being all Wilkinson wished at that time,) they did all that they were authorized to do by the guarantors. All power, all authority, and all liability under the contract of guaranty were then exhausted. Wilkinson could not thereafter use the guaranty again. The plaintiffs below could look to the guarantors for payment for the bill of lumber that day sold to Wilkinson, if he should fail to pay it, but they could not add anything to its amount by any subsequent sale. (See notes to *Birdsall v. Heacock,* in 18 Am. Law Reg., N. S., p. 757.)

2. If plaintiffs below intended to treat the instrument sued upon as a continuing contract, it was their duty to give notice to plaintiffs in error of such intention on their part. (Brandt on Suretyship, § 157, and cases cited.)

Clearly, plaintiffs in error could never have intended to give Wilkinson unlimited authority to make as many purchases as he might choose upon the strength of their guaranty. To do that, and yet limit the amount of any one purchase to $2,000, would be an absurdity. If it was a continuing guaranty, Wilkinson could have made *three hundred* separate purchases in one year, aggregating $600,000.

*Sluss & Hatton,* and *Hackney & McDonald,* for defendants in error:

1. Is the instrument sued on, a continuing guaranty? But little aid can be drawn from decided cases upon this question. (2 Mich. 504.) In *Lawrence v. McCalmont,* 2 How. (U. S. Sup. Ct.) 126, it is said:

"If the language used be ambiguous and admits of two fair interpretations, and the guarantee has advanced his money upon the faith of the interpretation most favorable to his rights, that interpretation will prevail in his favor; for it does not lie in the mouth of the guarantor to say that he may, without peril, scatter ambiguous words by which the other party is misled to his injury."

In *Douglass v. Reynolds,* 7 Pet. 122, it is said:

"As these instruments are of extensive use in the commercial world, upon the faith of which large credits and advances

17—26 KAS.

are made, care should be taken to hold the party bound to the full extent of what appears to be his engagement; and for this purpose it was recognized by this court, in *Drummond v. Prestman*, 12 Wheat. 515, as a rule in expounding them, that the words of the guaranty are to be taken as strongly against the guarantor as the sense will admit."

The question was exhaustively examined in *Gates v. McKee*, 13 N. Y. 232, and again in *Ringe v. Judson*, 24 id. 64, in which cases this principle of construction was adopted, and in the former case Mr. Justice Davis, after quoting some of the foregoing extracts, says:

"These extracts so happily express my notions of the rules of construction which ought to prevail in this class of cases, that I need only add, that the same general principle will be found asserted, with more or less distinctness, in *Bell v. Bruen*, 1 How. 169; *Haight v. Brooks*, 10 A. & E. 309; *Mayer v. Isaac*, 6 M. & W. 605; *Dobbin v. Bradley*, 17 Wend. 422; *Hargrave v. Snill*, 6 Bing. 244."

With this principle of construction in view, what was the most reasonable inference the Chicago Lumber Company was authorized to draw from the language of the instrument, in view of the surrounding circumstances and the known customs of business? Was it not justified in supposing that if the signers of this instrument meant to convey the idea that they were guaranteeing a single transaction, they would have said so in plain terms? If they intended simply to authorize the said company to sell Wilkinson *one bill of not more than $2,000 worth* of such lumber as he wished, on credit, and that they would see it paid after ninety days' notice of default, would it not have been the easiest thing in the world to have expressed that idea unmistakably by the use of plain language, without resort to circumlocution of words? But that idea is not, by any fair interpretation, expressed in the instrument.

That meaning, however, is sought to be extorted from the instrument by a strained and unnatural use of the expression "at once," and an appeal is made to Webster's biggest dictionary to show that this expression is to be read as if the word "immediately" had been used.

Looked at fairly, the guaranty is divisible into three parts: 1. The grant of authority to furnish the lumber; 2. The limit of the liability; 3. The promise to pay.

The first is created by the words, "We hereby authorize the Chicago Lumber Company to furnish Wilkinson such building material as he may wish;" the second, by the words, "Not exceeding two thousand dollars at once;" the third, by the words, "Upon ninety days' notice, we agree to pay to the Chicago Lumber Company the amount remaining due." These three elements of the contract were placed in their natural order in the instrument by the guarantors themselves.

Now, to construe the instrument to be only a limited guaranty authorizing but a single transaction, we must force the words "at once" out of the order in which they *were* placed by the parties themselves, and put them in an order in which they were *not* placed by the parties, and make the instrument read : "We hereby authorize the Chicago Lumber Company to furnish Wilkinson such building materials *as he may wish at once*, not exceeding two thousand dollars." Certainly no unprejudiced mind can say that that was the sense in which it was read by defendants in error when they received it.

Then suppose we conclude to substitute in lieu of the expression "at once," some of the expressions found in Webster, in the sense in which it is said "at once" is sometimes used. We have no right to select one particular expression in preference to another. We find from Webster that "at once" is used in the sense of "at the same time." We therefore have the same right to substitute that, and make the instrument read, "Not exceeding two thousand dollars at the same time," as we have to make it read, "Not exceeding two thousand dollars immediately."

There is nothing in the facts or circumstances surrounding the parties which may be drawn to the aid of the construction contended for by plaintiffs in error, that the guaranty was intended to cover only a single transaction. But the facts being that Wilkinson was a retail lumber dealer, and wanted a credit in his business, and as a single sale to the amount of

$2,000, on a credit of ninety days or four months, would be of no material advantage, while a continuing credit on which he could purchase bills to that amount would enable him to prosecute his business to some purpose, it is reasonable to suppose it was the understanding of the parties that he wanted and was to have a continuing credit.

2. Plaintiffs in error say that there was "no notice of acceptance of the guaranty," and argue therefrom that they are not bound. It is fair to say the decisions on this question are not altogether reconcilable, either as to principle or application, and there is what may be termed a "line of decisions" on both sides of the question. To justify the requirement of notice of acceptance in a given case, there must be a reason for it, applicable to the facts of the given case. In other words, it must be upon the facts of each particular case upon which a reason is based for requiring notice of acceptance in that case. The general reason of the rule contended for is, that the notice of acceptance of the guaranty, and of an intention to act under it, is necessary to the *inception of the contract;* that there is no *contract* of guaranty until the notice of acceptance is given.

Now, to follow this reason to its logical conclusion, there can be no advance made on a guaranty until notice of acceptance is first given. Notice given after an advancement cannot be drawn to the aid of the advancement, because the contract of guaranty did not have its inception until after the advancement, and the advancement could not have been made on the faith of the contract of guaranty, for the reason that it was not a contract at the time.

But it is insisted that whether there is any reason for it or not, the *great weight of authority* in this country requires such notice to be given. Great "weight" is sought to be attached to the authority upon that side of the question, from the simple fact that the supreme court of the United States has sanctioned the view that notice of acceptance is necessary to create a liability. We understand that while this court entertains great respect for that high tribunal — as is the duty of us all —

its decisions are given just such weight as the intrinsic quality of the decision itself entitles it to, and no more. We unhesitatingly say that the course of decision in the United States supreme court upon this question does not constitute the weight of authority upon the question, and invite the consideration of the court to opinions of other respectable courts, in which this question has received a most thorough investigation and exhaustive treatment. We refer to *Farmers &c. Bank v. Kercheval*, 2 Mich. 504; *Powers v. Bumcratz*, 12 Ohio St. 273; *Douglas v. Howland*, 24 Wend. 35; *March v. Putney*, 56 N. H. 34. (See also *Jackson v. Yandes*, 7 Blackf. 526; *McIver v. Richardson*, 1 M. & S. 557; *Whitney v. Groot*, 24 Wend. 82; *Case v. Howard*, 41 Iowa, 479; 1 Parsons on Contracts, 479; Wade on Notice, § 388; *Gard v. Stevens*, 12 Mich. 192; Brandt on Suretyship, § 165, and cases cited.)

The instrument sued on in this case contains every element of an absolute present guaranty, and not a single feature of a mere offer. It is executed by Wilkinson, the principal, and by the plaintiffs in error. It is in all essential particulars a bond or absolute undertaking. The language could not be stronger. It says to the Chicago Lumber Company: "You *are hereby* authorized to furnish materials," etc., and "we *agree to pay* the amount."

Square this instrument by any to be found in any reported case, and if there is an absolute guaranty to be found, this is one.

3. Plaintiffs in error claim that inasmuch as during the progress of the business, Wilkinson became for a time indebted to the Chicago Lumber Company in an amount exceeding two thousand dollars, the limit of the guaranty was exceeded, and the guarantors were thereby discharged.

The only case in which guarantors are discharged by operation of law, is where the contract of guaranty is materially altered without the consent of the surety, or where a valid contract for extension of the time of payment is made without consent of the surety. To effect the discharge of a surety from any other cause arising out of the conduct or the *laches*

of the creditor, it must appear affirmatively that the surety has sustained injury in fact, to such an extent as to render the enforcement of the guaranty inequitable or unjust. There is no such showing by the agreed case here. There is no showing that extending the credit beyond two thousand dollars, if such limit is the true construction of the contract, worked an injury in fact to the interests of the plaintiffs in error; nor that delay in calling on them for payment worked any such injury.

Upon the question as to whether the extension of the credit to an amount greater than two thousand dollars operated to release plaintiffs in error, we refer to the following authorities: *Parker v. Wise*, 6 Mau. & Sel. 239; 3 Addison on Contracts, 132; DeColyar on Guaranties, 232; *Curtis v. Hubbard*, 6 Metc. (Mass.) 186; *Greer v. Bush*, (Miss.) 9 Rep. 473; *Claggett v. Salmon*, 5 Gill & J. (Md.) 314.

The opinion of the court was delivered by

VALENTINE, J.: This cause was tried in the court below upon the following agreed statement of facts:

"Now come the parties to the above-entitled cause, by their respective attorneys, and submit said cause to the court for its decision and judgment, on the following agreed statement of facts, to wit:

"1st. That at the commencement of this action, and at the several times hereinafter mentioned, the plaintiffs were and now are copartners, doing business under the firm-name of the Chicago Lumber Company, and were engaged in the business of selling lumber and building materials, at wholesale and retail, in the city of Wichita, Sedgwick county, Kansas.

"2d. That at the several times hereinafter mentioned, the defendant, T. A. Wilkinson, was engaged in the business of selling lumber and building materials in the city of Winfield, Cowley county, and state of Kansas.

"3d. That the said T. A. Wilkinson, defendant, desiring to obtain of the plaintiffs lumber and building materials on credit, and having requested the plaintiffs to furnish him such lumber and building materials, and the plaintiffs having declined so to do unless the said Wilkinson should furnish security for the payment of the same, the said Wilkinson

afterward and on the 11th day of March, 1878, presented an instrument in writing to the defendants Platter, Troup, and Curns, with the request that they execute the same, which they did execute on the day aforesaid, and deliver to the said Wilkinson, who on the same day delivered said instrument to the plaintiffs, a copy of which instrument is as follows:

"'WINFIELD, KANSAS, March 11, 1878.

"'We hereby authorize the Chicago Lumber Company, of Wichita, Kansas, to furnish to T. A. Wilkinson such building materials as he may wish, not exceeding the value of two thousand dollars at once; and if the said T. A. Wilkinson shall fail to pay for the same, either in money or material received from the Chicago Lumber Company, then upon ninety days' notice we agree to pay to the Chicago Lumber Company the amount remaining due from T. A. Wilkinson to the Chicago Lumber Company.

"'T. A. WILKINSON.                           JAS. E. PLATTER.
                                             M. G. TROUP.
                                             J. W. CURNS.'

"4th. That in reliance on said written instrument, the plaintiffs furnished said Wilkinson from time to time between the 11th day of March, 1878, and the 19th day of December, 1878, both days inclusive, such building materials as he wished; that the account hereto attached and marked 'Exhibit A' is a true and correct statement of the account kept by the plaintiffs with the said Wilkinson, and shows correctly the respective values of the several amounts of lumber and building materials, and the respective dates thereof, furnished by the plaintiffs as aforesaid, between the 11th day of March and the 19th day of December, 1878, both days inclusive, to the said Wilkinson, as well as the payments made by the said Wilkinson to the plaintiffs, on account of such lumber and building materials, between the 11th day of March, 1878, and the 14th day of January, 1879, both days inclusive, and the respective dates of such payments.

"5th. That on the 14th day of January, 1879, the plaintiffs and said Wilkinson had a full and complete settlement of their transactions growing out of the furnishing of the lumber and materials aforesaid, and in such settlement it was mutually ascertained and agreed by and between the plaintiffs and said Wilkinson, that there was due and payable from the said Wilkinson to the plaintiffs, on account of the lumber and building materials so furnished, a balance of $1,999.41, which the said Wilkinson then and ever since has failed to pay to the plaintiffs.

"6th. That for the purposes of this action it is agreed and understood that the settlement had by and between the plaintiffs and the said Wilkinson, and mentioned in the above fifth

subdivision of this agreement, was correct, and that the said balance there mentioned of $1,999.41 was the amount justly due from the said Wilkinson to the plaintiffs at the time of said settlement.

"7th. That neither of the defendants, Platter, Troup, or Curns, nor either of them, had any notice or knowledge whatsoever that the plaintiffs had accepted the guaranty contained in said written instrument, or that plaintiffs had furnished said Wilkinson any lumber or building materials thereunder, or that said Wilkinson had made default in the payment of the balance due from him as aforesaid to the plaintiffs, until the 10th day of April, 1879; that on the day last aforesaid the plaintiffs served on the defendants Platter, Troup, and Curns, severally, a written notice, of which the following is a copy, to wit:

"'WICHITA, KANSAS, April 10, 1879.

*Mr. T. A. Wilkinson, in account with Chicago Lumber Company.* (*Established 1866. Douglas Avenue, near depot.*)

To balance.......................................................................................$1,999.41.

"'*Messrs. M. G. Troup, J. E. Platter, J. W. Curns:* Please take notice, that Mr. T. A. Wilkinson has failed to meet the above liability, and that we look to you for payment within ninety days from receipt of this notice.

"'Yours, &c.,        CHICAGO LUMBER COMPANY.'

"That the defendant Wilkinson, at several times during the furnishing of lumber and building materials aforesaid, was indebted to the plaintiffs in excess of two thousand dollars, on account of such lumber and building materials, as shown by said 'Exhibit A'; that no part of said sum of money has been paid.

"That this cause shall be submitted and determined on the foregoing facts, and if it is determined that on such facts the plaintiffs are entitled to recovery in the action, the amount of the recovery shall be nineteen hundred and ninety-nine $\frac{41}{100}$ dollars, and seven per cent. interest thereon from the 10th day of July, 1879."

Upon the foregoing facts, the court below found the issues in favor of the plaintiffs and against the defendants, and rendered judgment accordingly; and three of the defendants, Platter, Troup, and Curns, now bring the case to this court for review. They claim that the court below erred for various reasons:

1. They claim that the written instrument sued on was only a proposition or offer to guarantee payment for the value of

the building materials to be furnished by the plaintiffs below to Wilkinson, and that as no notice of the acceptance of such proposition or offer of guaranty was given by the plaintiffs to them at any time before the lumber was furnished, or indeed at any time afterward, that therefore the written instrument never became a binding contract, and therefore that they never became liable on account of the same.

2. That even if said written instrument became a binding contract, still, that the guaranty contained therein was not a continuing one, but that it simply authorized the furnishing of building materials at only one time, and that all the building materials furnished at such time had been fully paid for.

3. That even if the written instrument was a binding contract without said notice, and even if the guaranty contained in the written instrument was a continuing one, still, that the plaintiffs never gave to the defendants Platter, Troup, and Curns, any notice of the advances made to Wilkinson of any such building materials, and therefore that they were released from all obligation on their guaranty.

4. That under said written instrument the plaintiffs had no authority to ever permit Wilkinson's credit to exceed the sum of two thousand dollars, and that the plaintiffs, by permitting such credit to exceed that sum, released the defendants Platter, Troup, and Curns, who were only sureties.

5. That the plaintiffs never gave the defendants Platter, Troup, and Curns, any reasonable notice of any default in payment made by said Wilkinson, and therefore, for that reason also, they were released from their guaranty.

It will be seen that the decision of this case can amount to but little more than merely a construction or interpretation of the written guaranty of the defendants Platter, Troup, and Curns. What does the guaranty mean? It may properly be divided into three parts: first, the grant of authority to the Chicago Lumber Company to furnish the materials; second, the limit in the amount of the value of materials to be furnished; third, the terms and conditions of payment. The guaranty will then read thus:

1. "We hereby authorize the Chicago Lumber Company, of Wichita, Kansas, to furnish to T. A. Wilkinson such building materials as he may wish,

2. "Not exceeding the value of two thousand dollars at once;

3. "And if the said T. A. Wilkinson shall fail to pay for the same, either in money or materials received from the said Chicago Lumber Company, then upon ninety days' notice we agree to pay to the Chicago Lumber Company the amount remaining due from T. A. Wilkinson to the Chicago Lumber Company."

We shall examine the above claims of error in the order above mentioned.

I. We think that the written instrument sued on was, in one sense, only a proposition or offer to guarantee payment for the value of the building materials to be furnished by the plaintiffs below to Wilkinson; but not in the sense as claimed by the defendants below. / The guaranty did not depend for its force and validity upon any notice subsequently to be given by the plaintiffs to the defendants, but depended solely upon the fact of the plaintiffs accepting the security furnished by the written guaranty, and delivering the building materials under it. ) It was evidently intended by the parties that the guaranty should be complete and absolute, without any such notice. The guaranty reads: "We hereby [that is, by this instrument, and without requiring a subsequent notice] authorize [that is, now authorize, using the word in the present tense] the Chicago Lumber Company, of Wichita, Kansas, to furnish to T. A. Wilkinson such building materials as he may wish," without saying a word about any notice to be given before the building materials were to be furnished; and then provides for payment for the building materials, upon *ninety days' notice* being given of the amount due for such building materials. It will therefore be seen that the question of notice was considered by the parties, and the only notice mentioned in the contract was the one with regard to payment for the materials furnished. If any other notice had been desired by the defendants, they would undoubtedly have

provided for it in their written guaranty.   After providing for one notice in their written guaranty, it can hardly be supposed that they intended that some other notice should also be given to them, and one which they did not mention in their written guaranty.

We think the guaranty was complete and absolute as soon as it was accepted by the plaintiffs, without any notice of such acceptance being given to the defendants.   We are aware that there is a great conflict among the authorities with regard to guaranties of a similar character to this.   See *Farmers &c. Bank, v. Kercheval*, 2 Mich. 504; *Powers v. Bumcratz*, 12 Ohio St. 273; *Douglas v. Howland*, 24 Wend. 35; *March v. Putney*, 56 N. H. 34; 1 Parsons on Contracts, 479; Wade on Notice, § 388, *et seq.*, also § 404.   See also authorities cited in brief of defendants in error.*

It is also claimed that the guaranty was not a continuing one, but was so limited that building materials could be furnished only at one time.   This, we think, is an erroneous interpretation of the contract.   The contract says: "We hereby authorize the Chicago Lumber Company of Wichita, Kansas, to furnish to T. A. Wilkinson such building materials as he may wish."   This is an authority to furnish building materials without any limit as to time, amount, or value. The defendants, however, after giving this unlimited authority, then limit the same by using the words "not exceeding the value of two thousand dollars at once."

Wilkinson was a retail dealer in building materials at Winfield, and the Chicago Lumber Company was a wholesale dealer in building materials at Wichita; and Wilkinson, desiring to purchase building materials of the Chicago Lumber Company on credit, to enable him to carry on his business at

---

*See also the case of *Wilcox v. Draper*, recently decided by the Supreme Court of Nebraska. (25 Alb. Law Jour. 209; 12 Neb. Rep.)   In that case the defendant wrote a letter to the plaintiff, introducing the bearer as a purchaser of lumber, who would ask for credit, which letter contained these words: "If you will accommodate him, you will greatly oblige him, and I will see you paid as he agrees."   Upon the faith of this guaranty, the plaintiff sold such bearer lumber on credit; and it was held by the Supreme Court of Nebraska that the defendant was liable as guarantor for the price of the lumber, *even though the plaintiff did not notify him that the guaranty was accepted.*

Winfield, procured this guaranty from the defendants, in order to obtain such building materials as he might want for his business; and evidently the defendants, contemplating that the Chicago Lumber Company would furnish to Wilkinson building materials at various times, inserted the limitation that they might furnish such building materials as he might wish, but "not exceeding the value of two thousand dollars at once," the words "at once" evidently meaning "at one and the same time."

We think this limitation, fairly construed, would prevent the Chicago Lumber Company from furnishing to T. A. Wilkinson on the credit of the defendants building materials to an amount exceeding at any one time the value of two thousand dollars; and this whether the building materials were procured at only one time or at several times. But we do not think that this limitation confines the parties to one transaction alone. There is also a great conflict among the authorities upon the question of continuing and limited guaranties, some authorities holding one way, and some another; but we think under the language of the present guaranty, there is not much room for any interpretation other than that above indicated. We would refer to the following authorities, among others: *Gates v. McKee,* 13 N. Y. 232; *Ringe v. Judson,* 24 N. Y. 64; Brandt on Suretyship and Guaranty, § 130, *et seq.*

If the said written instrument was a binding contract without notice of the acceptance of the guaranty, and if the guaranty was a continuing one, then no notice was required to be given to the defendants, except the one provided for in the written instrument, and except such as was necessary to enable them to avoid any loss that might occur on account of the insolvency of Wilkinson. We think this principle is so well settled that it will need no further consideration; and as it is not shown that the defendants have suffered any loss on account of failure to give such notice, we do not think that this point is well taken.

II. We do not think that it was intended by the written instrument to prevent Wilkinson from purchasing more than two thousand dollars' worth of building materials from the Chicago Lumber Company, or to prevent him from becoming indebted to said company in the sum of more than two thousand dollars; but it was simply intended to prevent him from purchasing, at any one time, more than two thousand dollars' worth of building materials on the credit of the defendants Platter, Troup, and Curns, and from creating any liability against them at any one time for more than that amount. The limitation contained in the written guaranty we think was simply intended as a limitation upon the liability of the defendants Platter, Troup, and Curns, confining such liability to $2,000. We therefore think that this point is not well taken.

III. The plaintiffs gave to the defendants Platter, Troup, and Curns, the notice that was provided for in the written guaranty; and we think that that was sufficient.

Taking the whole case together, we perceive no error, and the judgment of the court below will be affirmed.

All the Justices concurring.